## JENKINS *vs.* GRAY ET AL.

1. A return of no property, on an execution issued against the administrator of a deceased executor, upon final settlement of his intestate's administration, will not authorise the issuance of execution against the securities of the executor.

Error to the Orphans' Court of Lawrence. Tried before the Hon. Wm. M. Gallaway, Judge.

This was a motion by the defendants in error to quash an

execution issued from the Orphans' Court of Lawrence, in favor of the plaintiff in error. The facts are sufficiently set out in the opinion of the court. The Judge of the Orphans' Court sustained the motion, and the same is now assigned as error.

T. M. PETERS, with whom was L. P. WALKER, for plaintiff:

1. The decrees of distribution against Gallaway, administrator of Jennings, late executor of Jenkins, being regular, and the *fi. fa's* issued thereon having a sufficient judgment to support them, upon their return by the sheriff, "no property found," it was both proper and legal, that execution should issue "forthwith" against the sureties, Gray and Anderson. This was done, and the fi. fa's were irregularly quashed. Clay's Dig. 305, § 45; Clark v. West, 5 Ala. Rep. 117; Cawthorn v. Knight, 11 Ala. Rep. 579; 1 Archb. Pr. 292.

2. The statutes of 1845 and 1832, are remedial acts, and there is nothing in them forbidding the use of the remedy thus given against the sureties, after the death of the principal, as well as during his life: it is true, doubtless, that the remedy might not lie against an *administrator*, unless expressly given; but in this case, there is no administrator concerned, except Gallaway, and against him it is given by the act of 1845. Remedial statutes should be liberally construed, but in this case, the aid of construction is not required, because the language of the statute of 1832, is as broad as it can be. It comprehends *all* cases, " whenever any execution shall have issued on *any* decree made by the Orphans' Court and final settlement of executors" &c., and is "returned by the sheriff no property found"—thereupon " execution may and *shall* forthwith issue against the securities" of such executor, &c. And the statute of 1845, places *the administrator of an administrator or executor* precisely in such deceased administrator or executor's position in *all* respects, and hence it gives *execution* against *him* " on the decree" and final settlement. The act of 1845, brings distributees and creditors within the relief and remedies provided by the act of 1832. The *fact* then that the bond was made *before* the statutes of 1832, and 1845, or that the principal died before their enactment, or before the final settlement of September 1846, and decrees thereon, avails nothing. 6 Bacon's Abr. 389; 1 Black. Com. 88, n. 30; Dwarris,

718, 735; Aldridge v. T. C. & D. Rail Road, 2 Stewart and Porter, 199; Acts of 1845, 166, 167; Elliott and Perkins v. Mayfield and wife, 4 Ala. Rep. 417; Clay's Dig. 305, § 45; 5 Ala. Rep. 117; 11 Ala. Rep. 579.

3. In this mode of proceeding, the securities cannot impeach the regularity of the decrees of distribution against the administrator of the executor; for the settlement of the principal, or his representative, if he act without fraud, concludes them. Williamson v. Howel, 4 Ala. Rep. 693; 4 ib. 607; 5 Ala. Rep. 117; Wayman v. Campbell, 6 Porter, 219; McBroom v. Sommerville, 2 Stewart Rep. 515; McClure, et al. v. Colclough, et al, 5 Ala. Rep. 65.

4. The proceedings antecedent to the decrees of distribution, and the decrees of distribution upon the final settlement of September 1846, are regular, and in conformity with law; so also are the subsequent steps taken to bind the sureties, and as publication of notice of final settlement brought all the parties before court entitled to be there, or having a right to complain of what was done, and among others, the *sureties* themselves might have come and superintended the final settlement, it is now too late, in this way, to complain of the consequences of the decrees then rendered. Clay's Dig. 229, §§ 41, 42; ib. 303, 304, 305, §'s 31, 42, 43, 44, 45; Horn v. Grayson, 7 Porter, 270; Brazeale v. Brazeale, 9 Ala. Rep. 491; Steel v. Knox, 10 Ala. Rep. 608; 11 Ala. Rep. 872; 11 ib. 104; Carroll v. Moore, adm'r 7 Ala. Rep. 615; 2 Archb. Pr. 148; ib. Forms, 499.

Wm. Cooper, for the defendants:

1. Until the act of 1845, page in pamphlet acts, 167, the county court had no power to call an administrator of an administrator or executor, &c., to a settlement of the estate of the first testator or intestate, to whom his intestate was immediate representative, hence the act of 1845. As a matter of course then, such a case as is now made, could not possibly have existed under the act of 1832. Clay's Dig. 304, '5, § 42, 45.

2. The question then arises *whether under the act of* 1845, any provision or power is given to the county court to issue executions against the securities on a return of *nulla bona*, as

to the executor or administrator. We contend there is no such power any where given, nor any rule whatever that could possibly sanction such a course. It has been decided again and again, that *at law*, no proceedings could be had against the administrator of an administrator touching the estate first administered on. See 3 Ala. Rep. 670, Taliaferro v. Bassett. There too it is questioned whether the sureties of the first administrator, are liable for assets in specie which pass at the administrators death, into the hands of his successor. There too, the court expressly decided, page 675, 3 Ala. Rep., that when there was no remedy expressly given to issue *fi fa.* at law, resort must *alone* be had in equity. Again, to show that before the act of 1845, the county judge could not *even call on the administrator of an administrator* or guardian to settle the official trusts of the deceased guardian or administrator, see 8 Ala. Rep. 655, Snedicor v. Carnes. There too, the court say that the county court has no other power *than that given by statute*, and also, that before 1845, the statutes were defective in giving the powers, and we insist that the statutes are yet defective, and have never given the power contended for by the plaintiff in error to issue *fi fa.* on return of *nulla bona* on the decree had *in final settlement* of an *administrator of an administrator,* on first estate; and that it is requisite that such power should be given by statute, I refer to the fact, that the act 1832, *gave that power when a judgment was had against first administrator* and went no further. The decisions refered to, also support my views on this point. 11 Ala. Rep. 579, Cawthorn v. Knight, does not at all conflict with my position, but does sustain me. In this case, the execution was unauthorized, there being neither *judgment* nor *statute* to sustain it. Under this state of the case, the remedy was to quash, and so the judgment in the court below is sustained by the books. 3 Ala. Rep. 653, Crenshaw v. Hardy; 5 Ala. Rep. 188, VanCleave v. Hayworth.

DARGAN, J.—Augustine Jenkins, in April 1822, executed his last will and testament, by which he appointed William Jennings his executor. In May 1823, the testator having departed this life, the will was admitted to probate in the Orphans' Court of Lawrence, and letters testamentary issued to

William Jennings, he having given bond in the sum of six thousand dollars, with Gray and Anderson as his securities. In 1825, Jennings died, without having made a settlement of his accounts as executor. Letters of administration, with the will annexed, on the estate of Jenkins were granted to another, but it does not appear, that there was any representation of the estate of Jennings, the executor, until the year 1846, when Gallaway, the sheriff of Lawrence county, was appointed administrator by virtue of his office. The estate of Jennings was declared insolvent, and on the application of Gallaway, a final settlement of the administration of Wm. Jennings was made, and a decree rendered against Gallaway, the administrator, for eight thousand one hundred and fifty-nine 93-100 dollars, being the amount of the assets received by Jennings, the executor, and wasted or not accounted for by him. There being three legatees entitled to this sum, it was divided into three equal parts, and a separate decree rendered in favor of each for his share or proportion. Executions were issued on these decrees, which being returned, no property, executions were issued against the securities of Jennings, the executor. The securities moved to quash the executions, on the ground that they were issued against them without authority of law. The motion was granted, and from the judgment quashing the executions, a writ of error is brought to this court.

Previous to the Act of the 27th January 1845, the Orphans' Court had no jurisdiction to compel the representative of a deceased executor, or administrator, to settle the accounts between the deceased executor or administrator and the estate which he represented; and if the deceased executor or administrator had committed a devastavit, or converted the goods of his decedent to his own use, the parties, whose rights were affected thereby, were compelled to resort to a court of equity for relief, to charge the estate of the deceased executor or administrator with the waste. Taliaferro v. Bassett, 3 Ala. Rep. 670; Snedicor v. Carnes, 8 Ala. Rep. 655. To remedy this defect in the powers and jurisdiction of the Orphans' Court, the act alluded to was passed, which confers jurisdiction on the Orphans' Court, to compel an administrator or executor of a deceased administrator or executor to account for effects which

had been received by such deceased executor or administrator, and wasted or not accounted for by him. But as to the mode in which the decree that may be rendered on taking the account shall be enforced, the Act of 1845 is entirely silent, and the question is, can an execution issue against the securities of the deceased administrator or executor, after an execution on such decree against the administrator or executor of the deceased administrator or executor is returned, no property found.

By the Act of 1830, (Clay's Digest, 304, 305,) all final decrees against an executor or administrator, or guardian, are declared to have the force and effect of judgments, on which executions may issue; and by the Act of 1832, (Clay's Digest, 305) upon the return of the execution, no property found, execution may issue against the securities of such executor, &c. The language of this Act is, " whenever any execution shall have issued on any decree made by the Orphans' Court on final settlement of the accounts of executors, administrators or guardians, and is returned no property found generally, *or as to a part thereof*, execution may, and shall, forthwith issue against the securities of such executor, administrator or guardian." It is very clear that the securities against whom execution can issue, on the return of no property, are the securities of the executor, administrator, or guardian, against whom the decree is rendered, and execution cannot be issued against the securities of a deceased executor, administrator, or guardian against whom no decree is rendered. Before the Act of 1845, no one would contend that the securities of Jennings were liable to this summary remedy, because, until the passage of this Act, the Orphans' Court had not jurisdiction to compel the representative of Jennings to settle the accounts between him and the estate of his testator. This Act, however, gives this jurisdiction to the Orphans' Court, but does not prescribe how the securities of the deceased executor, administrator or guardian, shall be made responsible *for the devastavit;* consequently neither the Act of 1832, nor of 1845, subjects the securities to this summary remedy. The execution was therefore issued without authority of law, and was properly quashed.

Let the judgment be affirmed.