# Martin *v.* Ellerbe's Adm'r.

*Action by Surety on Administration Bond, against Personal Representative of Deceased Principal.*

1. *Administration bond; liability of surety, on death of principal without settlement.*—On the death of an administrator, not having made

[Martin v. Ellerbe's Administrator.]

a final settlement of the trust, the liability of the surety on his official bond is not contingent, or conditional—dependent on a judicial ascertainment of the state of his accounts; nor would the surety be bound by any judicial proceeding to compel a settlement of the accounts of his deceased principal, except by a bill in equity to which he was made a party.

2. *Same; implied promise of indemnity to surety.*—The promise of indemnity, which the law implies as between the principal and his surety, springs out of the relation existing between them so soon as it is formed, and does not arise from the subsequent discharge by the surety of a liability or default of the principal; such subsequent payment only fixing the measure of damages he has sustained, and the amount necessary to be reimbursed for his full indemnity.

3. *Same; payment by surety without suit.*—The surety may discharge his liability without suit, unless warned by his principal not to do so, or unless the liability is made dependent on the creditor's obtaining judgment, and he may so pay a liability or demand which is purely equitable; but, in so doing, he assumes the burden of proving, as against the principal or his estate, the liability and its amount, and can not recover beyond the amount which the creditor might have recovered against him and his principal.

4. *Same; payment of equitable demand.*—If the demand paid by the surety was purely equitable, involving the settlement of complicated accounts, on which the creditor could not have maintained an action at law, his claim for reimbursement by his principal is purely a legal demand, notwithstanding the character of the evidence which may be necessary to sustain it; and his only remedy, in the absence of special circumstances, is an action for money paid.

5. *Same; payment in compromise.*—Since the right of the surety, as against the principal or his estate, is to indemnity only, he can in no case recover more than the amount actually paid by him, though it was paid in compromise of a greater liability; but the liability of the principal can not be increased by any compromise effected by the surety, unless made in ignorance of matters which lessen the liability, and which he could not by reasonable diligence ascertain.

6. *Privity between administrator in chief and his successor; how far acts and admissions of former are conclusive on the latter.*—There is no technical privity between an administrator in chief and a succeeding administrator *de bonis non*, and the acts or admissions of the former, and judgments against him, are neither conclusive nor admissible against the latter; yet an administrator *de bonis non* is bound and concluded by the rightful administration of his predecessor—by all acts done within the line of his duty and authority, which are not tainted with fraud; not only by all completed acts of administration, but by all matters of evidence that would affect creditors, legatees and distributees.

7. *Judgment against administrator in chief; admissibility against succeeding administrator.*—A decree in chancery against the personal representative of a deceased administrator, and the surety on the official bond of such deceased administrator, to compel a settlement of his administration, having been paid by the surety, is admissible evidence in his favor, in a subsequent action against the administrator *de bonis non* to recover the money so paid, for the purpose of showing his liability, and also his relation to his deceased principal; although the amount was fixed by consent, under a reference to the register.

APPEAL from the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

This action was brought by Atlas J. Martin, against Samuel W. Pegues, as the administrator *de bonis non* of the estate of Alexander W. Ellerbe, deceased; and was commenced on the

3d August, 1878. The first count in the complaint was in the form of a common count for money paid, claiming $4,000 for money "paid by plaintiff for defendant's said intestate, at his request, on, to-wit, February 23d, 1873, and divers other days thereafter, with the interest thereon;" and the third count was as follows: "3. Plaintiff also claims of defendant, as administrator as aforesaid, the further sum of $4,000; for that whereas, heretofore, to-wit, on the 12th February, 1864, in the life-time of defendant's said intestate, he, the said intestate, was duly appointed by the Probate Court of Dallas county, Alabama, the administrator *de bonis non* of the estate of Albert Waller, deceased, and then and there gave bond as such administrator, in the sum of $200,000, for the faithful discharge of his duties as such administrator; and the plaintiff and one Joseph P. Strother became his sureties on said bond, and duly executed the same as such sureties; which bond was duly approved and accepted by the judge of said Probate Court, and said intestate thereupon duly qualified as administrator as aforesaid, and entered upon the discharge of his duties as such, and, upon the faith of said bond, took possession of all the property of the estate of said Albert Waller, deceased, remaining unadministered in the State of Alabama, and continued to act as such administrator from the day of his appointment until his death, to-wit, on or about the 5th April, 1865. And whereas, afterwards, to-wit, on April 9th, 1873, a final settlement of said intestate's administration on the estate of said Waller was duly had and made in the Chancery Court of Dallas county, Alabama; said court having theretofore, to-wit, on 9th January, 1867, by a bill of complaint duly filed therein by the then administrator *de bonis non* of said Waller's estate, against Catherine B. Ellerbe, the then administratrix of the estate of said Alexander W. Ellerbe, deceased (but who has since departed this life, and said defendant has been appointed administrator as aforesaid), and against said plaintiff and others, obtained jurisdiction of the estate of said Waller, and, at the time of said final settlement, having jurisdiction thereof, and of said intestate's administration thereon; and on said final settlement it was ascertained, adjudged and decreed, by the said Chancery Court, that defendant's intestate was, on the 24th February, 1873, indebted to the estate of said Waller, on account of his administration on said estate, in the sum of $5,000; and said plaintiff was a party defendant to said bill of complaint, and was bound by the decrees and proceedings in said cause, and was liable as surety as aforesaid to pay said sum of $5,000. And whereas the said indebtedness of $5,000, owing by defendant's said intestate to the estate of said Waller, as ascertained and decreed by said Chancery Court, was, on, to-

[Martin v. Ellerbe's Administrator.]

wit, the 24th February, 1873, settled by and between said Catherine B. Ellerbe, as the then administratrix of the estate of said defendant's intestate, the said plaintiff, the said J. P. Strother, and C. A. C. Waller as the then administrator *de bonis non* of said Albert Waller's estate, by paying to the said Waller in cash, on the day aforesaid, the sum of $1,666.66, and by executing, together with one J. Alex. Ellerbe, their two promissory notes, of date last aforesaid, each for the sum of $1,666.66, bearing interest from date, one payable on the 1st January, 1874, and the other on the 1st January, 1875; all of which was done by and with the consent of the said Catherine B. Ellerbe, the then administratrix of the estate of defendant's said intestate, and at her request; and said notes were afterwards fully paid and satisfied. And said plaintiff avers, that of the said cash payment of $1,666.66, mode on the 24th February, 1873, he paid to the said C. A. C. Waller, as the administrator *de bonis non* of said Albert Waller's estate, the sum of $833.33; and that plaintiff paid to him, on the said two notes made and given in settlement of said indebtedness as aforesaid, the following sums of money, and at the dates following, to-wit," specifying them; " and that said payments were made for and on account of defendant's said intestate, and by reason of his liability as aforesaid. Yet the said Catherine B. Ellerbe, as the administratrix of the estate of said A. W. Ellerbe, in her life-time, and the said defendant have not as yet paid the said sums of money, or any part thereof, though often requested so to do," &c.

The defendant demurred to this special count, assigning the following as grounds of demurrer: "1. That said count does not show any cause of action against this defendant. 2. That said count does not show that plaintiff paid the money, for the recovery of which this action is brought, for or on account of any debt or liability of the estate of said A. W. Ellerbe. 3. That said count does not' show that the money sued for was paid at the request, or for the use of the said A. W. Ellerbe, or at the request, or for the use of any one authorized to bind his estate, or this defendant as his personal representative. 4. That said count shows that the fact and amount of the liability of the estate of the said A. W. Ellerbe, in said chancery suit, was ascertained and fixed by the agreement and consent of the said Catherine B. Ellerbe, who had no authority to bind the estate of said A. W. Ellerbe, or this defendant; and said agreement was made, and the amount agreed on settled, before said decree was rendered, and the same was rendered in pursuance to said agreement. 5. Said count shows that neither the admission, agreement or consent, or the request of the said Catherine B. Ellerbe, upon which said payments were made, or the decree

rendered in said cause, is binding on the estate of the said A. W. Ellerbe, or on this defendant as his administrator. 6. Said count fails to show that the estate of the said A. W. Ellerbe was indebted to the estate of said Albert Waller. 7. Said count fails to show that plaintiff paid any debt, or any part of any debt, of the estate of said A. W. Ellerbe. 8. Plaintiff seeks, in and by said count, to recover a sum of money paid by him as the surety of the said A. W. Ellerbe, on his bond as administrator of the estate of said Albert Waller, and fails to show any indebtedness of said Ellerbe, or of his estate, to the estate of said Albert Waller, or any liability of the plaintiff as such surety. 9. Said count fails to show any breach of the bond of the said A. W. Ellerbe as the administrator of said Albert Waller's estate, or any default or *devastavit* on the part of said A. W. Ellerbe as said administrator."

The court sustained the demurrer, and the plaintiff then filed an additional count, numbered 4, which set out the appointment of said A. W. Ellerbe as the administrator *de bonis non* of the estate of said Albert Waller, the execution, acceptance and approval of his bond, with plaintiff and J. P. Strother as his sureties, his entrance on the discharge of his duties on the faith of the bond, taking possession of all the property of the estate remaining unadministered, and continuing to act as administrator until his death on 5th April, 1865, as in the 3d count, and then proceeded thus: "And whereas, the defendant's said intestate, while he was the administrator of said Waller's estate, and as such administrator, became, and was at the time of his death, indebted to the estate of said Waller in a large sum of money, to-wit, in the sum of $5,000, and being so indebted, the said plaintiff and the said Strother became liable therefor on the aforesaid bond to said Waller's estate. And whereas, afterwards, to-wit, on 9th April, 1873, a final settlement of the administration of defendant's said intestate on said Waller's estate was duly had and made in the Chancery Court of Dallas county, Alabama; said court having theretofore, to-wit, on 9th January, 1867, by a bill of complaint therein duly filed by the administrator *de bonis non* of said Waller's estate, against Catherine B. Ellerbe, the then administratrix of said A. W. Ellerbe's estate (but who has since departed this life, and said defendant has been appointed administrator *de bonis non* as aforesaid), and against said plaintiff and others, obtained jurisdiction of the estate of said Waller, and, at the time of said final settlement, having jurisdiction thereof, and of the administration of defendant's said intestate thereon; and upon said final settlement it was ascertained, adjudged and decreed by the said Chancery Court, that defendant's said intestate was, on the 24th February, 1873, indebted to the estate of said Albert Waller, on account

[Martin v. Ellerbe's Administrator.]

of his said administration on said estate, in the sum of $5,000; and the said plaintiff was a party defendant to said bill of complaint, and was bound by the decrees and proceedings in said cause, and was liable as surety as aforesaid to pay said sum of $5,000. And whereas defendant's said intestate was, on said 24th February, 1873, indebted to said Albert Waller's estate, on account of his said administration thereon, in the sum of $5,000, and plaintiff was liable, as surety on the aforesaid bond, to pay said estate said sum of $5,000; and whereas, on, to-wit, 24th February, 1873, said indebtedness of $5,000, due and owing by defendant's said intestate to said Waller's estate, was settled by and between said Catherine B. Ellerbe, as the administratrix of the estate of defendant's said intestate, the said plaintiff, the said J. P. Strother, and C. A. C. Waller as the administrator *de bonis non* of said Albert Waller's estate, by paying to the said C. A. C. Waller the sum of $1,666.66 in cash on the day aforesaid, and by the said plaintiff, Strother, and Catherine B. Ellerbe, together with one J. Alex. Ellerbe, executing their two promissory notes," &c., describing them; and the count then proceeded, to the end, in the same words as the third count.

The defendant demurred to this count, assigning the same grounds of demurrer as to the third, and the following in addition : " 1. Said count shows that the indebtedness of said A. W. Ellerbe's estate to the estate of said Albert Waller, which was paid by the plaintiff, arose out of said A. W. Ellerbe's administration on said Waller's estate, and fails to show that any settlement has ever been made of said administration, or that the amount or fact of said debt has ever been ascertained in any manner which was binding on this defendant. 2. Said count fails to show that the fact or amount of said indebtedness of A. W. Ellerbe, or his estate, to said Waller's estate, has ever been ascertained in a manner which is binding on this defendant, and does not show that this court has jurisdiction to ascertain either. 3. Said count shows that the indebtedness, which plaintiff claims to have paid, arose out of said A. W. Ellerbe's administration on said Albert Waller's estate; that the agreement and decree, by which the same is alleged to have been settled, are not binding on this defendant; and that this court has no jurisdiction to make such settlement, or to ascertain or fix the fact or amount of such indebtedness." The court sustained the demurrer to this count, also; and the defendant having pleaded, to the first count, the general issue and the statute of non-claim, issue was joined on those pleas; and a jury having been waived, the cause was submitted to the decision of the presiding judge, " under the provisions of the statute establishing the City Court of Selma."

[Martin v. Ellerbe's Administrator.]

On the trial, as the bill of exceptions states, the plaintiff proved that, on the 12th of February, 1864, letters of administration *de bonis non* on the estate of Albert Waller, deceased, were duly granted by the Probate Court of Dallas county to Alexander W. Ellerbe, who thereupon gave bond, in the penal sum of $200,000, conditioned as prescribed by law for the faithful discharge of his duties as such administrator, with J. P. Strother and plaintiff as his sureties; that said bond was approved and accepted by the probate judge of said county, and the administrator thereupon entered upon the discharge of the duties of the trust, took possession of all the property belonging to the estate of said Waller, and continued to act as administrator until on or about 5th April, 1865, when he died, intestate; that on 14th August, 1865, letters of administration on the estate of said A. W. Ellerbe were regularly granted by the Probate Court of said county to Mrs. Catherine B. Ellerbe, who thereupon qualified as such administratrix, and continued to act in that capacity until her death, which occurred a short time before the commencement of this suit; that afterwards, to-wit, on 10th June, 1878, letters of administration *de bonis non* on said Ellerbe's estate were granted to Pegues, the defendant in this suit, who was administrator when the suit was brought; that C. A. C. Waller was appointed by said Probate Court, soon after the death of said A. W. Ellerbe, as the administrator *de bonis* of Albert Waller's estate, and he duly qualified as such administrator; that said A. W. Ellerbe never made any final settlement of his administration on Waller's estate, and no final settlement of his said administration had ever been made in said Probate Court.

"The plaintiff then offered in evidence a transcript, duly certified, from the Chancery Court of Dallas county, showing that, on the 9th January, 1867, the said C. A. C. Waller, as the administrator *de bonis* of Albert Waller's estate, exhibited in said court his bill of complaint against Catherine B. Ellerbe, as the administratrix of said A. W. Ellerbe's estate, and against plaintiff and said J. P. Strother, as the sureties on said A. W. Ellerbe's bond as administrator of said Waller's estate, and against the heirs of said Waller; setting forth facts which gave said court jurisdiction to finally settle said A. W. Ellerbe's administration of said Waller's estate, and praying, with other things, that said court might take jurisdiction of said estate, and that said estate might be finally settled by the court, and that an account might be taken of said Ellerbe's administration on said estate, and that said Catherine B. Ellerbe, as the administratrix of said A. W. Ellerbe's estate, and said J. P. Strother and the plaintiff, might be required by the decree of said court to pay to said C. A. C. Waller, the complainant in said bill,

[Martin v. Ellerbe's Administrator.]

whatever might be found due to him as such administrator, on the taking of said account. Said transcript further showed, also, that the said parties to said bill were regularly served with process in said cause; and that the said Catherine B. Ellerbe, J. P. Strother and the plaintiff in this cause, appeared in said Chancery Court, and filed their answers to said bill of complaint, denying the equities in said bill against them; that afterwards, by its decree duly entered, said court took jurisdiction of said Waller's estate, as prayed in and by said bill of complaint, and proceeded to administer the same; and that on the 9th April, 1873, upon proceedings duly had in said cause, the register of said court reported, by consent of parties, that there was due from said A. W. Ellerbe's estate to said Waller's estate, by reason and on account of said Ellerbe's administration on said estate, the sum of $5,000; and that afterwards, at the April term of said court, 1873, the register's said report was in all things confirmed by the court, and a final decree in said cause then and there rendered by said court, by consent of parties, wherein and whereby it was ordered, adjudged and decreed, that said Catherine B. Ellerbe, as the administratrix of said A. W. Ellerbe's estate, and the said J. P. Strother and this plaintiff, as the sureties on his bond as administrator of said Waller's estate, pay to the said C. A. C. Waller, as the administrator *de bonis non* of said estate, the said sum of $5,000, so reported by the register as aforesaid. The defendant objected to the introduction of said transcript as evidence against him in this cause, on the ground that he was not a party to said cause and proceedings therein contained, and the same are not binding on him, and not admissible as evidence against him. The court sustained said objection, and excluded said transcript as evidence, on this single ground; to which ruling of the court the plaintiff excepted.

"The plaintiff then offered legal and competent evidence, tending to show that said A. W. Ellerbe was, at the time of his death, indebted to said Waller's estate, by reason and on account of his administration upon said estate, in a large sum of money, to-wit, in the sum of $50,000; but the defendant objected to the introduction of said evidence, on the ground that said court had no jurisdiction to ascertain and determine the indebtedness and liability of said Ellerbe to said estate by reason and on account of said administration, no final settlement of said administration having been made in a proceeding to which said defendant was a party. The court sustained said objection, and refused to allow said evidence to be introduced; to which ruling the plaintiff excepted. The plaintiff then offered legal and competent evidence, tending to prove that, after the rendition of said chancery decree above described, he

and the said J. P. Strother fully paid and satisfied said decree; that he paid one-half thereof, with interest, and said Strother paid the other half; that he paid $600 on said decree on the 23d November, 1876, $300 on the 22d October, 1877, $300 on the 4th February, 1878, and $171 on the 21st March, 1878. But the defendant objected to the introduction of this evidence, and each part thereof, on the ground that he was not bound by said decree, not having been a party to said cause, and the payment thereof by plaintiff gave him no right to sue defendant in this court for the money so paid. The court sustained the objection, and excluded said evidence; to which the plaintiff excepted.

" This being all the evidence offered, the court found the issues in favor of the defendant, and rendered judgment for the defendant; and the plaintiff excepted to said judgment."

The several rulings of the court on the pleadings and evidence, and the judgment rendered, are now assigned as error.

The case was decided in February, 1881; but the original opinion has been lost, and the case is now reported from the certified copy of the opinion sent to the court below.

PETTUS, DAWSON & TILLMAN, for appellant.

WHITE & WHITE, *contra*.    (No briefs on file.)

BRICKELL, C. J.—The death of Ellerbe terminated the trusts of his administration of the estate of Waller, for the due and faithful performance of which the appellant was liable as his surety, according to the tenor and effect of the bond into which they had entered. As surety, the appellant was bound to pay whatever liability then rested on Ellerbe as administrator. His liability was not contingent, or conditional: it did not depend upon a judicial ascertainment of the state of Ellerbe's accounts, by a suit in any court.—*Fretwell v. McLemore*, 52 Ala. 124; *McDowell v. Jones*, 58 Ala. 25. A settlement of the administration in the Court of Probate, made between the administrator of Ellerbe and the administrator *de bonis non* of Waller, or with the distributees of Waller, would not have been evidence against the appellant. As to him, it would have been *res inter alios acta;* and a decree in a court of equity, in a suit against the personal representative of the principal, for a settlement of the administration, to which the appellant was not made a party, would not have been evidence against the appellant. Neither, as to him, would have fixed and ascertained the defaults of the principal, for which he was bound to answer. *Jenkins v. Gray*, 16 Ala. 100; *Gray v. Jenkins*, 24 Ala. 516; *Howard v. Howard*, 26 Ala. 682; *Stovall v. Banks*, 10 Wall.

583. The sureties of an administrator, or executor, in the absence of fraud or collusion, are bound by judgments or decrees rendered against their principal, in the course of his administration, as they are bound by acts he is required by law to perform; but they are not bound by judgments or decrees against, or acts done by the personal representative of the principal, for whose fidelity they have not promised to answer. There is no remedy which can be pursued against the surety of an executor or administrator, after the death of the principal, to fix liability for the default of the principal, other than by bill in equity. There can be, after the death of the principal, no judicial ascertainment of his liability, which would be evidence against the surety; and without it, no action at law on the bond could be maintained.

The principal, from the moment the bond was executed, was under a legal liability to indemnify the surety—to save him harmless from all loss by reason of any breach of the condition. The liability does not arise from the fact that, subsequently, the surety is compelled to discharge a default for which the principal was primarily liable. The contract, the promise of indemnity, is implied by the law, when the relation of principal and surety is formed. A subsequent payment by the surety, to relieve himself from liability, simply becomes the measure of damages he has sustained by the failure of the principal to keep and perform the contract, and fixes the amount necessary to be reimbursed him, in order to his full indemnity.

It can not be insisted, that a surety may not pay the debt of the principal, for which he is answerable, without awaiting suit and judgment, if such is not the term and stipulation of the contract. If his liability is not contingent and conditional,—dependent upon the common creditor obtaining judgment against him or his principal,—and he is not, for some good reason, warned by the principal not to pay without suit, it would be a harsh rule, provoking unnecessary litigation, to compel him into a suit, the burdens of which he may be compelled to bear, in addition to the burden of the common obligation.—*Mauri v. Heffernan*, 13 Johns. 58; *Craig v. Craig*, 5 Rawle, 91. It is not important, save so far as the surety may be involved in embarrassment and difficulty of making proof, that the measure of his liability, and that of the principal, is dependent upon complicated accounts, the matter of exclusive equitable cognizance, as between the principal and himself as surety, and the parties to whom they are bound. If he deems it proper, he may make an adjustment of his liability, without suit; and if he should pay no more than the principal is justly bound to pay, the latter can have no cause to complain that the payment was without suit, relieving him from additional burden of costs. When,

by the default of the principal, the surety is involved in liability, he can resort to any measure he may deem best adapted to his own relief, taking care that he does not increase the liability, or detract from the interests of the principal.

In the case now before us, in consequence of the death of the principal, there was no remedy which could be pursued against the surety, by those having rights and interests in the administration, other than a bill in equity; and according to the theory of the appellee, and on which the ruling of the City Cout was based, in that suit, no decree could be rendered, which would be evidence of his liability, except as against the particular represenative who was joined with him in the suit. No good reason can be assigned for compelling the surety into a suit of that kind, of necessity expensive and dilatory; and the decree in which, while binding and concluding him, is of the inherent weakness imputed to it, in its operation upon the estate of the principal, which ought to be devoted to the indemnity and relief of the surety. Of course, if the fact is controverted, when the surety seeks to recover of the principal, he must show that he has discharged the debt, or the liability of the principal, for which as surety he was liable; and he can recover only the amount of such debt or liability, so far as he has paid it. If he pays more than could have been recovered of the principal, he is entitled to recover only to the extent of the principal's liability; unless the principal may have been discharged from liability to the common creditor by the statute of limitations, or other defense, which the surety could not have made available for his own protection.

The claim of the surety for indemnity from the principal, though he may pay and satisfy a pure equitable demand against the principal, of which, as between the common creditor and principal and surety, a court of equity alone would have had cognizance, is a *legal*, not an *equitable* claim. The surety becomes, by the payment, a mere simple-contract creditor of the principal; and his only remedy, at common law, was an action of assumpsit for money paid, which, though not in name, is in substance preserved by the Code, and the only remedy he can now pursue, unless some peculiar circumstances intervene which would give a court of equity jurisdiction.—*Sanders v. Watson*, 14 Ala. 198. The claim of the surety is not affected by, and does not partake of the nature and character of the demand of the creditor against him and the principal. That may have been a specialty, or a judgment, but the claim of the surety is for money paid, which the principal ought, for his ease, to have paid in discharge of the primary liability resting upon him. When, as in this case, a court of equity only may have jurisdiction to enforce the liability of principal and surety, and the

[Martin v. Ellerbe's Administrator.]

surety pays and discharges it, his only claim against the principal is a legal claim for money paid, which the principal is bound to pay, because of the implied contract, springing up when the bond was executed, that he would indemnify and hold harmless. If the payment is made without suit, as the surety may pay, if the liability of the principal is denied, the surety must prove it. The proof may involve an inquiry into all the accounts of the administration, and the surety may find himself involved in more or less of embarrassment and difficulty in establishing the liability; but the court of law is not called upon to exercise equitable jurisdiction. The jurisdiction of a court of equity is to enforce the trusts of an administration,— to marshal and distribute the assets to whoever is equitably entitled to receive them. In the exercise of the jurisdiction, there must be an account taken of the assets, and an audit and allowance of the vouchers of the administrator. Evidence must be heard in reference to these matters, or the jurisdiction can not be fully and beneficially exercised. The jurisdiction of a court of law is to enforce the liability of the principal to indemnify the surety, and, in enforcing that liability, it may be necessary to receive evidence of like character with that which a court of equity must have received in enforcing the trusts of the administration, and in marshalling and distributing the assets. It is not the character of evidence which must be introduced, that determines the jurisdiction of courts, but it is the ends and purposes to which the evidence is directed, the nature of the claim or demand in controversy, and the judgment which must be rendered.

Laying out of view, for future consideration, the effect of the decree rendered against appellant and the administrator in chief, there can be no doubt the City Court erred in rejecting the evidence proposed to be introduced, tending to show the amount of the liability of the deceased principal as administrator, and that it was equal to, or exceeded, the amount the appellant paid in its satisfaction. The introduction of the evidence would not have compelled the court into the exercise of equitable jurisdiction, or to the rendition of any other than a mere personal judgment, of the same nature and character it would have rendered in any action strictly *ex contractu*. The determination of like questions with those which a court of equity must determine in the exercise of its jurisdiction, it may be, the court must have determined; but it is not infrequent, and is of necessity the case, that courts of law, and of equity, determine the same questions. The court could not pass upon and determine the rights a court of equity must have passed upon and determined; and this it was not invited to do. But it was bound to determine a fact and right the court of equity

[Martin v. Ellerbe's Administrator.]

could not determine—the extent of the liability of the principal to the surety, and the validity of the claim of the latter to indemnity.    The surety, unlike distributees or legatees, stands in no relation of trust to the principal, nor does the principal bear to him the relation of a trustee; and it is this relation which lies at the foundation of the jurisdiction of a court of equity.    When the surety pays the debt of the principal, the relation is that of debtor and creditor, *simply*, *purely*, and is *legal*, not *equitable*, whatever may have been the relation of the principal to the party to whom the surety makes payment.

Whether the payment made by the surety is in compromise, either to avoid, or to terminate litigation, does not affect his right to indemnity, if he has not thereby injured the principal —if he has made no sacrifice of his rights and interests.    Whatever may be the actual liability of the principal, though it may exceed the amount the surety has paid, the amount of that payment is the measure of his liability to the surety; and if the payment is in excess of his liability, the principal can not, if the payment was not made by the surety in ignorance of matters which lessen the liability, and without reasonable diligence to ascertain them, be made liable for more than his real liability to the common creditor.    Throughout the whole law of the relation of principal and surety, and in all their duties to each other, protection of the surety from loss, by the principal, because of the liability for the principal he assumes gratuitously, is the end to be accomplished.    The surety must not profit by the relation—he can not speculate upon it; and the principal is under the moral and legal duty of indemnifying him fully, so long as he is not compelled to a sacrifice of his own rights and interests wantonly or negligently by the surety. In no aspect of the case, was the evidence, proposed to be introduced for no other purpose than to show that the amount the appellant had paid was not in excess of the liability of the principal, inadmissible.    The principal could have introduced all evidence fixing the amount of liability at a less sum than that claimed of him, which he could have introduced to lessen or relieve him from liability to pay the amount the surety claims of him.    The purpose, and only effect of the evidence, would have been to show the extent of the liability of the principal, for which the surety was bound, and indemnity against which, so far as he had paid it, the principal was bound to make; and it would not have affected the relation or liability of the principal to the *cestuis que trust* of the administration, —the creditors and next of kin of the intestate.

In relation to the admissibility in evidence of the record of the decree of the Court of Chancery, against the administrator in chief and the appellant as surety of the intestate, we do not

VOL. LXX.

[Martin v. Ellerbe's Administrator.]

conceive that it depends upon the inquiry, whether there is such technical privity or connection between an administrator in chief and an administrator *de bonis non*, as will render, in all cases, judgments or decrees against, or the acts or admissions of the former, binding upon, or evidence against the latter; as they might be, if the one was clothed only with the rights, and claimed only in succession to the other. By the common law, the two administrations were separate, distinct, independent of each other. The one was not the mere successor to, or continuation of the other. Each was, of itself, an immediate, full administration. The administrator in chief, by the terms of the grant to him, was clothed with title to, and the duty and authority of administering, all the goods and chattels, rights and credits, which were of the testator or intestate at the time of his death. The administrator *de bonis non*, by the terms of the grant to him, was confined, limited in authority to the goods and chattels, rights and credits of the testator or intestate, which were unadministered—it was *de bonis non administratis.* The import of the terms of the respective grants clearly indicates the distinction between them, and, so far as regards the administrator *de bonis non*, directs attention as to what act of the administrator in chief, or what was done while his authority was of force, within the line of his duty, was an administration. The term *administration*, in this respect, is of comprehensive meaning. It includes more than the mere collection of the assets, the payment of debts and legacies, and distribution to the next of kin. It involves all which may be done rightfully in the preservation of the assets, and all which may be done legally by the administrator in his dealings with creditors, distributees or legatees, or which may be done by them in securing their rights; and it includes all which may be done, and rightfully done, in relation to adverse claims to assets, which have come to the possession of the administrator as the property of the testator or intestate. Presentment of a claim, within eighteen months from the grant of administration, is essential to save it from being barred. A vacancy occurring in the administration, before the eighteen months have expired, will not intercept the running of the statute.—*Lowe v. Jones,* 15 Ala. 545. Custom has rendered it proper, if not the duty of the administrator, if the creditor requests it, to make a written acknowledgment of the fact of presentment. Acknowledgment in writing is not indispensable to the validity of a presentment—the fact may rest in parol. But, if a written acknowledgment is given, it is evidence of the fact against a succeeding administrator.—*Starke v. Keenan,* 5 Ala. 590. If the evidence of presentment rests wholly in parol, the admissions of the administrator, made during the continuance of his

[Martin v. Ellerbe's Administrator.]

authority, are competent evidence to prove it, against a succeeding administrator.—*Pharis v. Leachman*, 20 Ala. 662. It is settled by several decisions of this court, that an administrator, or executor, may bind the personal assets, by a promise to pay a debt barred by the statute of limitations; and if the promise is made, it is binding upon a succeeding administrator. *Newhouse v. Redwood*, 7 Ala. 598. It may be true, as a general rule, that there is no technical privity, or connection, between an administrator in chief and an administrator *de bonis non*, and that the acts or admissions, or judgments or decrees against the former, are not evidence against the latter. The rule must, however, be accepted with the explanation, that the administrator *de bonis non* is bound and concluded by the rightful administration of his predecessor—that all acts within such administration, not tainted with fraud, he cannot undo, or disturb, or deny their legal efficacy. Otherwise, successive administrations would be fraught with unmixed mischief, and would provoke a multiplicity of litigation.— *Wernick v. McMurdo*, 5 Rand. 51.

The common law gave to an administrator the unqualified legal title to all personal assets, and its incident, the power of disposition, approximating the absolute power residing in the intestate. A complete, unqualified alienation of the assets, however improper, though a *devastavit*, was an administration, changing the title; and no title to such assets would pass to the administrator *de bonis non*. And by whatever means the property in the assets was changed, the change was regarded as an act of administration—they were goods administered, and to them the title of the administrator *de bonis non* did not extend. So, if the property in *choses* in action was altered,—as if the administrator received part of a debt, and for the remainder took a promissory note payable to himself,—the title of the administrator *de bonis non* would not extend to such note. 1 Lomax on Ex'rs, 548–50.

The title of the administrator *de bonis non* extending only to unadministered assets—to such as remained in *specie*, unaltered or unconverted by his predecessor—it was well settled, that he could not compel his predecessor to a settlement of his administration, or recover of him because of his delinquencies, or *devastavits*. In this respect, the common law was changed by statute, enacted in 1846, which has been since continued of force. Not only is authority conferred, but the duty is imposed of compelling such settlement; and for any want of diligence in the performance of the duty he is responsible, as he would be for negligence in the collection of *choses* in action of the intestate.— *Whitworth v. Oliver*, 39 Ala. 286. The effect of the statute is the substitution of the administrator *de bonis non*

to all the rights and remedies which were vested in creditors, or legatees, or distributees, to compel a settlement of the preceding administration, and his title, authority and duty are precisely that which is conferred and imposed in reference to the *choses* in action of his intestate.— *Waring v. Lewis*, 53. Ala. 628–9.

The two administrations are not connected : technical privity between them is not created, nor any other privity than such as existed prior to the statute. The title, authority and duty of the administrator *de bonis non*, are simply enlarged, and extended to the reduction into possession of assets for the payment of debts or legacies, or for distribution, to which it was not extended at common law.—*Graves v. Flowers*, 57 Ala. 402. Standing in this relation of enlarged authority and duty, substituted to rights and remedies of creditors, or of legatees or distributees, it is not the rights only, but the burdens of the relation, which must be accepted. Not only is he affected by all the completed acts of administration by his predecessor, as he was at common law, but by all matters of evidence, which would affect creditors, legatees or distributees. A judgment or decree against his predecessor, for a debt of the intestate, can not be made the basis of an action at law against him, because in the judgment the debt of the intestate is merged. *Graves v. Flowers, supra.* Such a judgment, though it may be in form *de bonis intestatis*, has in it many of the elements of a personal judgment against the administrator. On the return of an execution to be levied of the goods and chattels of the intestate, *No property found*, without further proceeding by *scire facias*, or otherwise, an execution may issue against the administrator personally, to be levied of his own goods and chattels, lands and tenements.—Code of 1876, § 2620. Upon such judgment, an action against the administrator and the sureties on his bond can be maintained; and it is conclusive evidence that he had assets sufficient for its payment, if he has not reported the estate insolvent, and obtained in the Court of Probate a decree of insolvency.—*Reid v. Nash*, 23 Ala. 733; *Powe v. Sterrett*, 16 Ala. 339; *Thompson v. Searcy*, 6 Port. 393; *May v. Kelly*, 61 Ala. 489. The statutes, while providing for the revival of judgments obtained by an administrator, in the name of his successor, have made no provision for the revival of judgments against him. There is no necessity for such provision, because of the operation and effect of the judgment as against the preceding administrator. Whether, if the creditor should exhaust his legal remedies against the preceding administrator, and the sureties on his bond, and they should prove unavailing, a court of equity would not compel payment from the assets in the hands of the administrator *de bonis non*,

is a question not settled by any decision of this court, and is not now a matter for consideration. The judgment is, however, evidence against the succeeding administrator, and against creditors, legatees and distributees, until impeached for fraud, because it is rendered in the regular course of administration; and because the judgment or decree of a court of competent jurisdiction, rendered between parties, and the only parties capable of, or having an interest in litigating the subject-matter, is final and conclusive, putting an end to the controversy, and entitling the party in whose favor it is rendered to freedom from further vexation, and the jeopardy of another trial; for the like reason, that no man ought to be put in jeopardy twice for the same offense.—Freeman on Judgments, § 247.

In *Pickens v. Yarborough*, 30 Ala. 408, there had been a recovery of slaves, in an action against an executor; and in the absence of fraud, the verdict and judgment was held conclusive on the creditors of the testator. There are numerous authorities, which hold judgments against an executor, or administrator, conclusive as between the parties obtaining them, and the legatees or distributees—*Redmond v. Coffin*, 2 Dev. Eq. 443; *Mason v. Peter*, 1 Mun. 437; *Sanders v. Godley*, 23 Ala. 473; s. c., 36 Ala. 55. The reason is, that they bind and affect the legal title with which the personal representative is clothed—that he is the party capable, and having the right and interest in litigating the subject-matter; and that the order and peace of society require that they should put litigation to rest. In controversies between the administrator, or executor, and legatees or distributees, such judgments are evidence. *Prima facie,* they are deemed correct; but they may be impeached for fraud, or because they are not founded on just demands, and there was a want of diligence by the personal representative in defending against them.—*Gaunt v. Tucker*, 18 Ala. 27; *Pearson v. Darrington*, 32 Ala. 227; *Teague v. Corbitt*, 57 Ala. 529.

It is said by several of our decisions, and especially in *Rogers v. Grannis*, 20 Ala. 247; *Thomas v. Sterns*, 33 Ala. 137; and *Graves v. Flowers*, 51 Ala. 402, to which we are now referred, that an administrator *de bonis non* is not bound by a judgment against his predecessor, nor is it evidence against him. The expression may have been correct in the particular cases; it certainly was in the latter case, in which it was attempted to support an action at law against the administrator *de bonis non*, founded on a judgment against his predecessor. For the reasons we have previously given, the action was not maintainable, and, of itself, the judgment was not evidence to charge the assets in his hands to be administered. Whenever the expression may be found, it must, as we have already said, be accepted with the explanation, that whatever was rightfully

[Hatcher and Wife v. Dillard's Administrators.]

done, in the course of regular administration by the preceding administrator, is not, by the change in administration, deprived of legal efficacy : it is a matter finished, which can not be undone, in the absence of fraud; and it is evidence against the administrator *de bonis non*, to the same extent to which it is evidence against creditors, legatees, or distributees.

There can be no doubt that the decree of the Court of Chancery is conclusive on the complainants in whose favor it was rendered. If they were now seeking to re-open the controversy, and to charge the administrator *de bonis non*, because of the liability of his intestate, the decree could be pleaded, or given in evidence as a final, conclusive bar. In operation it is mutual; it is equally final and conclusive upon all who can have the rights and interests of the intestate which are affected by it. It established the liability of the intestate, for which the appellant as his surety was bound; and of that liability, and of the relation of appellant, it is evidence against the appellee.

The City Court erred in sustaining the demurrers to the third and fourth counts of the complaint, and in its rulings as shown by the bill of exceptions.

Reversed and remanded.