## WATERS et al. v. MANUFACTURERS TRUST CO.

### No. 9726.

Circuit Court of Appeals, Sixth Circuit.

July 5, 1944.

Philip W. Buchen, of Grand Rapids, Mich. (Morton Keeney, Philip W. Buchen, and Butterfield, Keeney & Amberg, all of Grand Rapids, Mich., on the brief), for appellants.

George B. Balamut, of New York City (Fred N. Searl and Searl, Messinger & White, all of Grand Rapids, Mich., and Leonard G. Bisco and George B. Balamut, both of New York City, on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The controversy here presented lies in the field of conflict of laws, and decision rests upon a determination whether the law of Michigan or the law of New York governs the liability of a trust created by the creditors and legatees of a deceased obligor on a joint promissory note after a settlement by the payee with the other joint maker and release of the latter from further liability. This suit was by the payee for a declaratory judgment to determine its rights against the trustees under the declarations of trusts. The facts were stipulated and the question is solely one of law.

The appellee is a New York banking corporation succeeding, by merger, to the rights of the Chatham Phoenix National Bank and Trust Company, the original payee of the note here involved. On October 25, 1929, the decedent, Dudley E. Waters, and Joseph H. Brewer, both of Grand Rapids, Michigan, executed a

384

joint promissory note in the principal sum of $270,000, payable to the Chatham Phoenix National Bank and Trust Company, at its office in New York City. It evidenced a loan from the bank to the makers, the proceeds of which were used by them to purchase 10,000 shares of Chatham Phoenix Allied Corporation, the shares being issued one-half to Waters and the other to Brewer. From time to time the note was renewed, the last renewal being January 19, 1931. On that date Waters died testate, and his estate was administered in the Probate Court for Kent County, Michigan, the appellants being appointed executors under the will. The bank filed claims against the estate, one of which was in the sum of $270,000, based upon the last renewal note, and was allowed. On February 9, 1932, the bank merged with the appellee and it became the owner of the note and the claim. Under authority of the Probate Court the executors and Brewer, from time to time, issued renewal notes, the last being dated October 27, 1932, in the sum of $225,000, the balance then owing upon the original claim as allowed.

On August 1, 1933, agreements and declarations of trust were entered into by the creditors, legatees, and the executors of the Waters' estate, for the purpose of administering its assets for the benefit of creditors and legatees. One of the trust agreements related solely to the real estate of the Waters' estate, though both trusts had their situs in Michigan. Consents to the agreements and declarations were not received from all creditors until August 11, 1936, and on December 24 of that year, the final account of the executors was allowed and they executed the required deeds and bills of sale of the properties of the estate, to themselves as trustees.

On November 20, 1936, subsequent to final ratification by all creditors, but prior to the transfer of the properties to the trustees, the Trust Company entered into an agreement of compromise and settlement with Brewer covering his obligation on the note. This agreement was to be performed in New York, released Brewer from all further liability and expressly reserved rights against the Waters' estate. No other. party to the trust agreements was party to the settlement agreement with Brewer. By its terms, Brewer paid the bank $27,675, whereupon the bank notified the Waters' executors that such

settlement had been made. In July, 1941, the trustees made a distribution to creditors in the amount of 10% of the principal of their claims. The trustees computed the bank's share of the dividend on the basis of one-half of the principal amount of $225,000, and tendered the dividend, so computed, to the bank. It refused to accept it, claiming it was entitled to 10% of the principal of its allowed claim minus the payment made by Brewer pursuant to his compromise agreement. The court held with the bank upon a conclusion that the Brewer release did not discharge the trustees except to the extent of the consideration paid for his release.

Whatever may have been the various contentions raised by the appellants below, they now base their appeal on but a single legal principle. The trusts, they say, have their situs in Michigan, the trustees are there domiciled, the trust property is there located, and the trusts were authorized by a Michigan court. The State of Michigan is, therefore, the only possible situs of the trusts, and, therefore, under controlling principles, all questions bearing upon the administration of the trusts are controlled by Michigan law. Kitchen v. New York Trust Co., 292 Ky. 706, 168 S.W.2d 5; 2 Beale on the Conflict of Laws, § 297.2. The appellee contended, and the court found, that no question relating to trust administration was presented, that in view of the express reservations by the plaintiff in the release agreement with Brewer, all rights that the Trust Company had previously had against the Waters' estate under New York law, it retained against the trustees, Michigan law governing the liabilities of a joint obligor upon the release of the other obligor to the contrary, notwithstanding.

The difference between the Michigan rule and that in New York, is that under Michigan law a joint obligor may be discharged without discharging the other joint obligor, but upon such discharge the remaining obligor is liable only for his ratable proportion of the joint indebtedness. Michigan Compiled Laws 1929, §§ 9935, 9939. On the other hand, under New York law where one joint obligor is discharged but the obligee reserves rights against the other, the other remains liable for the total obligation minus the value of the consideration paid for the release. Thompson's Laws of New York 1939, part 1, Debtor and Creditor Law, Consol. Laws, c.

12, § 234. It follows, then, that if Michigan law is applied, because the computation of the bank's dividend by the trustees was in pursuance of the administration of a Michigan trust, the Trust Company was entitled to dividends only upon one-half of the face of the note, or $112,500, but if the New York rule is applied, the trustees are liable to the bank for a dividend of 10% on the full face of the note less what Brewer paid for his release, or upon $197,325.

It is conceded that the original note executed by Waters and Brewer, was a New York contract, that renewals thereof were likewise New York contracts, and if there had been no trust agreements, the obligation of the Waters' estate would be governed by the New York rule. The appellants insist, however, that upon the execution of the trust agreements and declarations, the Trust Company ceased to be a creditor and became the beneficiary of Michigan trusts, and that its right to participate in the benefits of the trusts is therefore governed by Michigan law. They point out that the Brewer release seeks to alter its right of participation in the trusts after the execution of the trust agreements, without notice to or consent by the other parties to such agreements. The proper rule, they say, is that determination of the rights of beneficiaries in a trust are matters of trust administration governed solely by the law of the state where the trust is located. By this principle alone may each beneficiary be assured of equal treatment no matter in what jurisdiction he may reside. They contend also that unilateral action by one beneficiary to a trust may not be permitted to affect rights of other beneficiaries in substantially identical position.

The conclusion of the District Judge that no question relating to trust administration was presented, is sharply challenged. It is the release of Brewer and the effect of the reservation therein contained that raises a question of administration. Such question may arise in different ways—it may arise on a question of the meaning of language in the trust instrument, or it can just as well arise as a question of the status of a legal obligation on which the beneficiaries' rights of participation in the trust are founded, and no matter how the question arises, it is still a matter of trust administration when it involves the rights of a beneficiary under the trust. Much argument has been indulged in on both sides as to what is or is not included in the term "administration." It is, as one court has expressed it (Martin v. Ellerbe's Adm'r, 70 Ala. 326), a term of comprehensive meaning, and includes preservation of assets, dealings with creditors, and a determination of what may be done by them in securing their rights. Underground Electric Rys. Co. v. Owsley, 2 Cir., 176 F. 26; Beale, supra, p. 1026. As we view it, we are not concerned with the boundaries of trust administration. If, in consideration of the nature and purpose of the trust, the rights of beneficiaries and the power and duties of trustees, as delineated by the trust instrument, a problem arises that demands solution, it may well be conceded that it must be resolved by resort to Michigan law, if any be applicable.

But we sense no problem. The trusts here involved were entered into by the creditors and legatees of the Waters' estate for the purpose of facilitating the closing of the estate and to provide for the holding of its assets for the benefit of such creditors and legatees. Its provisions, with respect to the rights of creditors, are simple, explicit, and unambiguous. Section IX provides:

"Status of Obligations

"It is expressly covenanted and agreed that none of the creditors by reason of their execution of this agreement, and their consent to the closing of said estate, shall be deemed to have waived or surrendered their claims against the property in said estate, but the respective claims of the creditors, with all and singular the agreements and rights they may have with respect thereto, shall continue against said trust properties, except as the same are expressly modified or changed by the terms of this agreement."

It also provides that "each creditor which has any right against a third party co-maker, co-obligor, endorser or guarantor shall be entitled to retain such right in full force and effect."

The conclusion is inescapable that it was the clear intent and purpose of the trust agreements to preserve each creditor's right against the assets of the Waters' estate without diminution or impairment, and without respect to whether such rights were vested or inchoate at the time of the formation of the trusts, and we are not

concerned with the question whether the trusts became effective upon the final consent of all creditors or only when the property of the estate was transferred to the trustees. It is immaterial that the nominal status of the Trust Company was changed from that of creditor of the estate to that of beneficiary of the trust. The status of the obligations was in no respect changed. The trustees are required by the terms of the trust instruments, to "make payments by way of dividend upon the claims of the creditors in proportion to their respective interests." The creditors are required to appoint a creditors' committee which is to supervise the operations of the trust, with specified powers and duties, and "creditors" are declared and defined to be those who were creditors of Dudley E. Waters, deceased, at the date of his death, and whose claims have been allowed against his estate. It is provided that the creditors shall share in the benefits of the trust and in the proceeds and income of its property, in proportion to the amount of their claims remaining from time to time unpaid. The trustees are to be subrogated to the right of any creditor, who has been paid in full, against any joint obligor upon the debt so paid, and' when paid in full such creditor shall cease to be one of the beneficiaries of the trust.

The Trust Company, as a beneficiary, was by the trust agreements, given every right against the trust estate that it had against the decedent's estate prior to the formation of the trusts. Its rights against the decedent included the right to release Brewer from his liability on the note, according to New York law, then unquestionably applicable. It is not strictly true that the bank's reservation of rights against the Waters' estate, contained in the Brewer release, was without the consent of other creditors or the legatees under the Waters will. All parties to the trust agreements consented, without reservation, to the perpetuation in the trust of each creditor's right against the estate. Accepting the appellants' classification, insofar as it includes questions that may arise as to the meaning of language in a trust instrument, we perceive no ambiguity in the present trust agreements and declarations, either obvious or latent, which raises any question of impairment or diminution in the rights of a creditor, by reason of change in nominal status to that of beneficiary. In the absence of such ambiguity there is no room left for construction, and in the application of this principle we are cited to no distinctions, and know of none, between Michigan and New York law.

The decree below is affirmed.